## Case No. 11,073.

PHELPS et al. v. The CAMILLA.

[Taney, 400.] [1]

Circuit Court, D. Maryland. April Term, 1838.

MARITIME LIENS—MATERIAL MEN—FOREIGN SHIP —CREDIT—PURCHASE BY AGENT OF OWN- ER—CREDIT OF VESSEL.

1. S. & T., at New York, were agents and consignees of the brig Camilla, owned in Bos- ton. At the request of the master of the Ca- milla, S. & T. gave their written order on P., D. & Co., for certain copper required to repair the vessel. The order was delivered by a clerk of S. & T. In the order no mention was made of the vessel or her owners, and the copper was furnished by P., D. & Co., and charged on their books to S. & T., to whom they also pre- sented the account for the copper, and whose negotiable note they took, payable in six months. S. & T. charged the Camilla, on their books, with the amount of the note, deducting three per cent. therefrom, to make it a cash transac- tion. The Camilla sailed from New York on her voyage. Before the note fell due, the owner of the vessel, and also S. & T., became insolvent, and this libel was filed by P., D. & Co., against the vessel, whilst lying at Baltimore, to recover the amount due for the copper. *Held*, that prima facie, the necessary repairs furnished by mate- rial men, to a foreign ship, are a lien on the vessel.

2. The six months' credit given would not pre- vent the lien from attaching.

3. But if the credit was given to the owner or any one else, and not to the vessel, then there was no lien.

[Cited in The James Farrell, 36 Fed. 501.]

4. Where the owner of a vessel has an agent residing at the place where the repairs are be- ing made, who purchases the materials in his own name, and gives his personal undertaking to pay the price, there will be no lien on the vessel, unless specially given. ·

5. In such case, the transaction becomes an ordinary one between buyer and seller, and al- though the materials are afterwards applied to the use of the vessel, that circumstance will not create a lien upon her.

6. The materials must be supplied for the ves- sel, and upon her credit, in order to create a lien.

7. Even if the materials had been originally charged to the vessel and her owner, the lien thus acquired would have been waived, by the material men afterwards taking the individual note of the agents or of the owner.

8. If the party does not choose to rely on the contract which the maritime law implies in such cases, but takes an express written con- tract, he must rely on the contract he makes for himself, and cannot, upon a change of cir- cumstances, resort to the securities upon which, in the absence of any special agreement, the law presumes that he relied.

9. If he takes a note or bill of exchange, or any other personal engagement for the payment of the debt, he is presumed to rely on this personal security, and to waive his lien, unless he stipu- lates that the liability of the vessel shall still continue.

[Appeal from the district court of the Unit- ed States for the district of Maryland.]

The libel in this case was filed in the dis- trict court on the 21st of April, 1837, by the

[1] [Reported by James Mason Campbell, Esq., and here reprinted by permission.]

members of the firm of Phelps, Dodge & Co., of New York, against the brig Camilla, of Boston, then lying at the port of Baltimore, and against E. G. Wiswell, and all others who might intervene in the cause. [Case un- reported.] The claim was for materials fur- nished by the libellants to said vessel, at New York, between the months of August and November in the year 1836; and alleged to have been furnished at the request of the master, and upon the credit of the vessel, as well as of the owners and master thereof. The libellants' claim was contested by the master of the vessel, who answered the libel, stating that he had been master of the brig Camilla since the 1st of March, 1836, and contended, by way of plea, that the said li- bel could not be sustained against the said brig or the respondent, according to the law of the land and the course of admiralty pro- ceedings, but that the same, if any claim ex- isted which could be enforced in admiralty, could only be enforced or sustained separate- ly against the brig Camilla, her tackle, ap- parel and furniture, or against the owner, or the master thereof, or against the two latter jointly. And for further plea in this behalf the respondent contended and insisted that if any lien existed against the said brig (which was not admitted), the same had been lost or relinquished, as would thereafter appear by the answer, or the evidence adduced in support of it. And for further defence and answer to the aforesaid libel, the respondent stated that the said brig was, from the 17th day of September to the 16th of October, 1836, in the port of New York; when and where, certain repairs being required for her, some person (it was presumed the libellants) furnished the copper set forth in their ac- counts, and the respondent admitted that the said account was true and correct, as there shown, so far as respected the furnishing thereof for the use of the said brig; that dur- ing, or about the same time, Smith & Town, merchants in New York, to whom the said brig and cargo were consigned, received for the owner of the said brig (who was T. D. Parker), and for the respondent as master, $1,775, which was sufficient to pay all bills and charges against the said brig and mas- ter, including the account of the libellants; and the respondent supposed and believed that the funds thus in their hands for this purpose had been honestly applied according- ly, but whether this account was paid or not, the respondent did not know, further than that provision was made for payment.

The respondent further set forth that the said brig belonged to the port of Boston, that she went from that port to Rio de Janeiro, thence to New Orleans, and thence to New York, where she lay one month, during which said copper was furnished, and the repairs aforesaid were made; that on the 1st of Oc- tober, 1836, the respondent advertised her in three newspapers, to sail to Rio de Janeiro on the 5th of October; that then he adver-

tised her to sail on the 10th of October, and lastly, on the 15th of October, and she did actually sail on the 16th of October, 1836; that during all this time, the libellants made no application for payment, nor did he know or suppose they had not been paid, for other bills were actually paid by said Smith & Town, and among others, the caulkers and gravers who put on the said copper. That having arrived at Rio de Janeiro, where she lay some time, the brig returned to New York, where she lay twenty days, and during all this time, the libellants did not call on the respondent for payment of their account, although the brig's arrival was advertised in all the newspapers in New York, and he believed it to have been paid. That having cleared from the custom-house in New York, which clearance was advertised in the different newspapers, two days afterwards, to wit, from the 20th to 25th of March, 1837, she sailed for Baltimore, where she arrived on the 27th of March; and that the first time the respondent knew that the account aforesaid was not paid, was seeing the monition in this case stuck upon the mast of the said brig, on the 22d of April, 1837. And the respondent further alleged that the libellants, who made the contract for furnishing the said copper with the said Smith & Town (this respondent never having seen either of the libellants, nor ever been called on by them), looked to Smith & Town for payment, and not to the said brig or to her then owner or master; and even if they did not, their lien, if any they had, had been lost by their neglect to enforce it, when the said brig was in New York repeatedly, and by their acquiescence in her repeated departures therefrom; and also had lost all claim on the owner or master of said brig. The respondent also prayed leave further to state, that since the arrival of the said brig in the port of Baltimore, to wit, on or about the 8th of April, 1837, she, with her tackle, apparel and furniture, had been sold to a certain William Dehone, of Boston, who had no knowledge of this pretended claim, at the time of his purchase, the libel in this case having only been filed on the 21st of the same month. It was agreed, in writing, between the parties, that the copy of the deed of trust for the benefit of creditors, from T. D. Parker to William Dehone, of Boston, might be given in evidence; and also that the New York newspapers, containing advertisements offering the brig Camilla for sale, freight or charter, and announcing her clearances, departures and arrivals at the port of New York, might be offered in evidence, to prove the facts set out in such advertisements. And it was also agreed, that said brig was, at the time the copper and materials were furnished as set out in the accounts, in the port of New York, and belonged to the port of Boston.

A commission was issued to New York to take testimony, at the execution of which, Smyth Clark, a competent witness produced by the libellants, stated that he knew the brig Camilla (Captain E. G. Wiswell), at the port of New York, about the months of August and November, 1836; he always understood the brig was owned by T. D. Parker, of Boston, and she belonged at that time to the port of Boston. That he never saw the bill of copper filed by the libellants, but he knew there was copper furnished by the libellants for the use of the said brig Camilla, the prices of which he could not recollect, but that the total amount of the bill was correct, being upwards of $1,100; that the copper was furnished said brig at the request of her master. The brother of the owner, Mr. Stanton Parker, Jr., requested deponent to send down the copper, after the master had given the order; but said Stanton Parker was not, to deponent's knowledge, either part-owner, or acting as agent of the owner. That the copper was furnished, through Smith & Town, in the following manner: Deponent was then a clerk of the said house of Smith & Town, and by their authority gave an order on the libellants to supply the copper, after the master requested it to be done; Smith & Town were then the agents of the brig, and had been so previously. That he could not say that the copper was furnished on the credit of the brig and her owners, nor that the libellants were informed it was for the use of the brig. The written order was in the name of Smith & Town, and signed by deponent as their clerk; it did not mention the brig Camilla; deponent could not say in what manner the libellants looked to Smith & Town's note when they took it, nor why the bill referred to in the defendant's fourth interrogatory, was made out to Smith & Town. Deponent knew that the copper was for the brig. From the appearance of that bill, if he looked at it alone, he would say that Smith & Town were looked to. Smith & Town gave their note to Phelps, Dodge & Co., in settlement of the bill, through the deponent; such bill, when originally rendered, extended to the figures $1,197.08, inclusive, and the deduction of three per cent. interest was a subsequent matter, to make it appear as cash between owner and agent. Previously to sending the order, deponent called on the libellants to know the price, and that being approved of by Stanton Parker, deponent gave the order; the bill above mentioned was checked by deponent and had some of his writing on it. That he had heard the captain say that the copper was necessary for the brig. That within a day or two of the protest of the note given by Smith & Town for the copper, perhaps on the same day, deponent delivered a message from Smith & Town to the libellants, informing them that they would not be able to take up the note, and that the vessel for which the copper was furnished, was then lying at Baltimore. In making up the accounts of Smith & Town against the brig, long before their failure, such copper was charged in the

blotter to brig Camilla, and posted to the credit of T. D. Parker, the owner. On cross-examination, he stated that he gave the order for the copper, being the clerk of said Smith & Town; that he was now a merchant; he never examined the brig before the copper was furnished; he knew nothing personally of her being seaworthy or not, and his only information upon the subject was that obtained from the captain and before stated.

Nathaniel E. James, on the part of the libellants, stated that he knew of the copper being furnished by the libellants, at the prices charged, for the use of the Camilla; deponent delivered the copper himself. That the copper was furnished through Smith & Town; he did not know personally of their being agents of the brig or of her owner; the copper was furnished at the request of Smith & Town; the entry in the libellants' books was made by him, in the hurry of business, and by mistake charged to Smith & Town, instead of "the brig Camilla and owners, per Smith & Town," as was the uniform usage of the libellants; that the bill was made out from deponent's entry; afterwards, when the error was detected, which was several months subsequently, the entry was corrected. As to the credit on which the copper was sold, he could only say, that the settled rule of the house was to enter a charge for copper furnished, against the vessel and the owners thereof; he believed the present the only case in which he made a different entry; he considered that the libellants looked to the brig and owners, as responsible, in case the note of Smith & Town was not paid. On cross-examination, he stated that Mr. Clark, the clerk of Smith & Town, called upon the libellants to buy the copper, and the order was given by said Clark as their clerk; that deponent was a clerk; he never examined said brig, and knew nothing about whether she was seaworthy or not.

Smyth Clark, being again examined on the part of the respondent, stated that Smith & Town were consignees of the brig Camilla. That the paper marked Exhibit A was a bill furnished the consignees by the libellants for the copper; this bill was settled by a note given by Smith & Town, at six months, which was not paid at maturity; that the firm of Smith & Town suspended payment about the 1st day of April, 1837.

By a further agreement, it was admitted, that the statement of the witness examined under the above commission, "that the captain of the Camilla stated that the copper in question was necessary for the brig," be received in evidence, without objection to its admissibility, on the ground that it was the declaration of the captain, who ought to have been produced and examined; also, that the libel be considered as amended so far, that the same be a libel in rem and not in personam, and that the plea to that part of the libel be withdrawn. The bill rendered by the libellants to Smith & Town, and referred to in the testimony as Exhibit A, was headed as follows: "Messrs. Smith & Town, bought of Phelps, Dodge & Co." The bill referred to as Exhibit B, being the one filed with the libel, differed only from Exhibit A in the heading, which was as follows: "Brig Camilla & owners, per Smith & Town, to Phelps, Dodge & Co., Dr."

R. N. Martin and Geo. W. Nabb, for appellants.

N. Williams, Joseph B. Williams, and John H. B. Latrobe, for appellees.

TANEY, Circuit Justice. The libel is filed in this case in order to charge the brig Camilla with the sum of $1,197.08, the amount due libellants for copper sold by them, and applied to the use of the brig. The Camilla belonged to the port of Boston, and was owned by Theodore D. Parker, of the state of Massachusetts. The brig being in the port of New York in the month of September, 1836, and requiring new copper to make her seaworthy, the master applied to Smith & Town, merchants of New York, who were the agents and consignees of the brig, to procure the necessary supply; the copper was bought from the libellants, on a credit of six months, in the following manner: Smith & Town gave their written order on the libellants for the copper, which order was sent to them by one of the clerks of Smith & Town; the order for the copper did not mention the brig Camilla or her owners, and was simply an order from Smith & Town. Upon this order, the copper was furnished by the libellants, and charged in their books to Smith & Town, and no reference whatever was made in the entry to the brig or her owners; and the libellants afterwards presented their account to Smith & Town, for the amount, and took their negotiable note, payable in six months.

The account originally presented by them has been produced, and is headed as follows: "New York, September 30, 1836. Messrs. Smith & Town, bought of Phelps, Dodge & Co."

The note given by Smith & Town does not purport to be made by them as agents, but is their own personal engagement to pay the money, and is in ordinary form of a negotiable note; and in their accounts with Theodore D. Parker in their books, they charged the amount of the note, deducting three per cent. from it, against the brig Camilla. The three per cent. was deducted in order to make the transaction a cash one, as between the owner and consignees.

The brig, on the 16th of October, 1836, after these repairs were made, sailed for Rio de Janeiro; from which place she returned to New York, about the 1st of March, 1837; remained there about twenty days; then sailed for Baltimore, where she was found when

the process in this case was served upon her. Parker, the owner of the vessel, stopped payment in March, 1837, and on the 26th of that month, executed a deed to a trustee, conveying all his property for the benefit of his creditors. Smith & Town stopped payment about the 1st of April, 1837, and within a day or two of the time when the note for the copper fell due, they informed the libellants that they would not be able to take up the note, and that the vessel, for which the copper was furnished, was then lying at the port of Baltimore; the libellants thereupon instituted these proceedings against the vessel, and the monition was served on the 22d of April, 1837.

These are the material facts in the case. It is true, that Nathaniel E. James, the clerk of Phelps, Dodge & Co., states that the entry above mentioned, in the books of the libellants, was made by him in the hurry of business, and the copper, by mistake, charged to Smith & Town, instead of "the brig Camilla and owners, per Smith & Town"; and that when the error was detected, which was several months afterwards, the entry was corrected. But the court think that the charge against Smith & Town is not accounted for, by the statement of the witness, that it was made in the hurry of business; for the account afterwards rendered to them, charged the copper in the same manner. The personal engagement of Smith & Town was also taken for the payment of the money in six months; and Phelps, Dodge & Co. not only received this note, but afterwards negotiated it, or intended to negotiate it, as appears by their endorsement upon it, which has since been cancelled. These acts of the libellants, taken together, can hardly be reconciled with the notion, that Smith & Town were erroneously charged with the copper, by a mistake of the clerk, in the hurry of business. If the copper had been charged to the "brig and her owners," per Smith & Town, they would not have been personally responsible to Phelps, Dodge & Co.; yet, all the acts of the parties are perfectly consistent with their personal responsibility, according to the charge in the original entry, and inconsistent with the one subsequently made; for Smith & Town, after having given their note to Phelps, Dodge & Co., at six months, proceed to charge against the owner the cash price of the copper, as if the amount had been settled with the libellants by them; besides, the vague manner in which the witness states the time when the error was discovered, and the omission to mention what circumstance led to the discovery, leave no doubt (when the testimony of this witness is compared with that of Smyth Clark) that this alleged error was never discovered, and the alteration in the libellants' books never made, until they were informed by Smith & Town that they were about to stop payment. An alteration made in the books of the libellants, under such circumstances, cannot be allowed to

affect, in any degree, the decision of the controversy now before the court.

It is admitted in the argument, that the lien given by the statute of New York cannot affect this case, and the question to be decided is, whether the debt due to Phelps, Dodge & Co., for this copper, is, by the general maritime law, a lien on the brig.

Prima facie, the necessary repairs furnished by material men to a foreign ship, are, without doubt, a lien on the vessel. The Camilla was a foreign vessel in the port of New York, so far as this question is concerned; the copper, it appears, was necessary, and the credit of six months would not prevent the lien from attaching. But all the authorities on the subject agree that, if the respondents show that the credit was given to the owner or any one else, and not to the vessel, then there is no lien; and I think it evident, from the testimony in this cause, it was furnished on the personal credit of Smith & Town.

In the case of The St. Jago de Cuba, 9 Wheat. [22 U. S.] 417, the supreme court decided that, if the vessel was in the port of a state to which she did not belong, yet, if the owner was present, and the contract made personally with him, it would be presumed to be made on his personal credit, and there would be no lien on the vessel, unless it was specially given. Can there be any difference in principle, where the owner has an agent residing at the place, who purchases the materials in his own name, and gives his personal undertaking to pay the price? I think not. If the circumstance that the contract was made with an owner transiently present at the port, would repel the legal presumption that the credit was given to the vessel, it would seem to follow, that the same rule must govern, where the contract was made by the consignee and agent of the owner, and he became personally responsible to the party furnishing the materials. In either of these cases, the transaction becomes an ordinary one between buyer and seller, and although the materials are afterwards applied to the use of the vessel, that circumstance will not make them a lien upon her; they must be supplied for her and upon her credit, in order to create the lien.

In the case before the court, they were, in truth, furnished to the vessel by Smith & Town. Phelps, Dodge & Co. sold the copper to Smith & Town, upon their personal credit, and Smith & Town furnished it to the brig; this is obviously the real history of this transaction, and Phelps, Dodge & Co., therefore, never had a lien upon the brig for the price of this copper.

There are strong reasons for believing that Smith & Town had funds of the owner of the Camilla in their hands, at the time this copper was purchased; for they would otherwise hardly have given their note for it, at six months, at the credit price, and charged it against the owner, at the cash price, deduct-

ing in their charge three per cent. from the amount for which they gave their note. And if they had funds in their hands, it would readily account for the manner in which they procured the copper, and would show the reason for purchasing it in their own names, and upon their own responsibility, instead of procuring it as agents merely, and upon the credit of the brig and her owner.

But I do not put the decision upon this ground, for if the issue of the controversy depended on this fact, I should have thought it incumbent on the respondents to establish it by more satisfactory proof, than the inference to be drawn from the circumstance I have mentioned. I do not, therefore, place the decision upon the ground that Smith & Town had funds in their hands sufficient to purchase the copper, but upon the ground, that the whole evidence shows, that it was sold to them by Phelps, Dodge & Co., upon their personal credit, and was not furnished on the credit of the brig and her owner; and that the first entry in the books of the libellants, gives the true account of the transaction.

It must not, however, be understood, that the decision would be different, if the copper had been originally charged to the Camilla and her owners. It is true, that upon such a sale, the libellants would, in the first instance, have acquired a lien upon the brig; but that lien, in my opinion, would have been waived by taking afterwards the note of Smith & Town. This is the doctrine recognised in The Nestor [Case No. 10,126], and in the case of Murray v. Lazarus [Id. 9,962], where the material men had agreed with the master to take a bill of exchange on the agents of the owners, the court held that it was a waiver of the lien.

In the last-mentioned case, the court say: "If this is to be considered a regular and ordinary bill of exchange, it was a satisfaction for any lien that might have existed, and must be considered as a relinquishment thereof." The same may be said of the note given by Smith & Town in this case, even if the account in the books of Phelps, Dodge & Co. is corrected in the manner stated in the testimony of James. If the party does not choose to rely on the contract which the maritime law implies in such cases, but takes an express written contract, he must rely on the contract he makes for himself, and cannot, upon a change of circumstances, resort to the securities upon which, in the absence of any special agreement, the law presumes that he relied; and if he takes a note or bill of exchange, or any other personal engagement, for the payment of the debt, he is presumed to rely on this personal security, and to waive his lien, unless he stipulates that the liability of the vessel shall still continue.

In either view, therefore, of the facts stated in the testimony, there is no lien on the Camilla, for the copper furnished by the libellants, and the decree of the district court dismissing the libel must, therefore, be affirmed.

I have said nothing of the deed made by Theodore D. Parker for the benefit of his creditors, because I do not think that the deed affects the merits of this controversy; and upon the principle adopted by the court, the decision must have been the same, even if Parker had remained solvent, and was still the owner of the brig. Decree affirmed, with costs.